JS 44 (Rev.)

# CIVIL COVER SHEET

*17-C-3555*

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

RECOVERY CENTERS OF AMERICA HOLDINGS, LLC
2701 Renaissance Blvd., King of Prussia, PA 19406

**(b)** County of Residence of First Listed Plaintiff   Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Joseph E. Vaughan, Esq.   100 N. 18th St., Ste. 700, Two Logan Sq.
O'Hagan Meyer      Phila., PA 19103  267-386-4350

## DEFENDANTS

NABIL N. GEORGES   *17   3555*
340 Sunderland Rd., Worcester, MA 01604

County of Residence of First Listed Defendant    Worcester
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government
      Plaintiff

☐ 2  U.S. Government
      Defendant

☐ 2  Federal Question
      *(U.S. Government Not a Party)*

☒ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|                                    | PTF | DEF |                                                          | PTF | DEF |
|------------------------------------|-----|-----|----------------------------------------------------------|-----|-----|
| Citizen of This State              | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State           | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                                      | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
      Proceeding
☐ 2 Removed from
      State Court
☐ 3 Remanded from
      Appellate Court
☐ 4 Reinstated or
      Reopened
☐ 5 Transferred from
      Another District
      *(specify)*
☐ 6 Multidistrict
      Litigation -
      Transfer
☐ 8 Multidistrict
      Litigation -
      Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. Section 1332

Brief description of cause:
Breach of Employment Agreement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE   8/4/17

SIGNATURE OF ATTORNEY OF RECORD  *(signature)*

## FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

AUG 04 2017

**UNITED STATES DISTRICT COURT**    **17   3555**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 2701 Renaissance Blvd., King of Prussia, PA 19406

Address of Defendant: 340 Sunderland Road Worcester, MA 01604

Place of Accident, Incident or Transaction: MASSACHUSETT
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐  No☒

Does this case involve multidistrict litigation possibilities?    Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

**ARBITRATION CERTIFICATION**
*(Check Appropriate Category)*
I, James S. Grimm, counsel of record do hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☐ Relief other than monetary damages is sought.

DATE: 8/8/17    _____ Attorney-at-Law    315600 Attorney I.D.#

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 8/8/17    _____ Attorney-at-Law    3156000 Attorney I.D.#

CIV. 609 (5/2012)    AUG - 4 2017



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

Recovery Centers of America Holdings, LLC      :          CIVIL ACTION
                v.                                              :
Nabil N. Georges                                              :          NO. **17   3555**

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                     (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                 (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                            (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                               (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.            ( X )

| 8/2.2017 | | Recovery Centers of America Holdings, LLC |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 267-386-4565 | 215-665-8300 | tgrimm@ohaganmeyer.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

AUG – 4 2017





**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RECOVERY CENTERS OF AMERICA HOLDINGS, LLC | ) ) | |
| Plaintiff, | ) | ) Civil Action No. |
| | ) | |
| v. | ) | |
| | ) | |
| NABIL N. GEORGES | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**17   3555**

**FILED**
AUG 04 2017
By KATE BARKMAN, Clerk
Dep. Clerk

**COMPLAINT AND REQUEST FOR INJUNCTION**

Recovery Centers of America Holdings, LLC ("RCA"), by and through its undersigned

attorneys, O'Hagan Meyer, PLLC, by way of Complaint against Defendant Nabil Georges

("Georges") avers as follows:

**THE PARTIES**

1.       Plaintiff Recovery Centers of America Holdings, LLC is a Delaware limited liability

company with its principle place of business located at 2701 Renaissance Blvd, King of Prussia,

Pennsylvania 19406.

2.       Defendant, Nabil N. Georges, is an individual who resides at 340 Sunderland Road,

Worcester, Massachusetts.

**JURISDICTION AND VENUE**

3.       This Court has jurisdiction of this action, pursuant to the United States Arbitration Act, 9

U.S.C. § 4, as a petition to a United States court for an order to compel arbitration.

4.      This Court also had subject matter jurisdiction over this matter pursuant to 28 U.S.C. §
1332(a)(1) because there is diversity of citizen between RCA and Georges, and the amount in
controversy exceeds $75,000, exclusive of costs.

5.      This Court has personal jurisdiction over Georges pursuant to an Employee
Confidentiality, Non-Competition & Non-Solicitation Agreement (the "Agreement") whereby
Georges consented to jurisdiction in the Courts of the Commonwealth of Pennsylvania.

6.      Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1391(a)
because a substantial part of the events or omissions giving rise to RCA's claims arose here.

## THE AGREEMENT

7.      RCA is an addiction recovery center with locations in Pennsylvania, Maryland, New
Jersey and Massachusetts.

8.      On or about August 1, 2016, Georges was hired by RCA at a facility located in
Westminster, Massachusetts.

9.      In connection with Georges employment with RCA, Georges and RCA (the "Parties")
entered into an Agreement dated, August 1, 2016, whereby Georges agreed not to publish,
disclose, or divulge any of RCA's confidential information. A true and correct copy of the
Agreement is attached hereto as Exhibit "A."

10.     The Agreement defines "confidential information" as "any confidential or proprietary
knowledge or information whatsoever acquired during employees employment with the
Company, including, but not limited to, information relating to or concerning the companies
treatment procedures, operating procedures, methods of operations, manuals, policies and
procedures, trade secrets, systems, quality assurance, customers, customer lists, managed care
providers that contract with the company, markets, suppliers, referral sources, sales training

processes and methods, previous, current and potential patients, (such as their names, contact information, amounts charged for services and including the fact that they are in need of the services provided by company), marketing, financial information, pricing, or any other confidential information regarding the Company." See Exhibit "A"¶1(a).

11.     The Employment Agreement provides, in pertinent part in paragraph 14:

**Dispute Resolution.** … any dispute between the Company and Employee in any way concerning, arising out of or related to Employee's employment, the termination thereof, this Agreement or its enforcement, shall be first submitted to mediation before a mutually agreeable mediator. If the matter cannot be resolved in mediation, then the dispute will be resolved in binding and mandatory arbitration before a single arbitrator who is familiar with employment law and conducted pursuant to the National Rules for the Resolution of Employment Disputes of the American Arbitration Association, or its successor, then in effect. The cost of the mediation and arbitration shall be paid equally by the parties unless the Employee can prove inability to pay the projected amount of fees. Each party shall initially be responsible for its own attorneys' fees, except that the arbitrator may award such fees and costs to the prevailing party, if permitted under state and federal law. All substantive rights which Employee and the Company or any Affiliate would have in a court of law, will be extended to the parties in arbitration, including all forms of relief. The decision of the arbitrator shall be final and may be entered as a judgment in any court of the Commonwealth of Pennsylvania. The mediation and arbitration proceedings required by this Section will take place in the Commonwealth of Pennsylvania. The requirement to arbitrate does not apply to the filing of an employment related claim, dispute or controversy with a federal, state or local administrative agency. However, Employee understands that by entering into this Agreement, Employee is waiving Employee's right to have a court and a jury determine Employee's rights, including, but not limited to, rights under federal, state and local statutes prohibiting employment discrimination, including sexual harassment and discrimination on the basis of age, sex, race, color, religion, national origin, disability, veteran status or any other factor prohibited by governing law. Employee also acknowledges and agrees that Employee is waiving any right to assert class, collective or other representative action claims against the Company to the fullest extent permissible by law and that the selected arbitrator will be prohibited from presiding over such claims.

*See Exhibit A* at ¶ 14 (emphasis supplied).

12.     In accordance with the Agreement, Georges acknowledged that a breach of any of the

provisions of the Agreement would result in irreparable and continuing damage to the RCA and

it business, for which there would be no adequate remedy at law. Id at ¶6

13.     In the event of any breach of the Agreement, Georges agreed that RCA would be

"entitled to immediately seek injunctive relief from a court of law and shall be entitled to such

other and further relief and damages as proper." Id.

14.     With the exception of RCA's entitlement to injunctive relief, any disputes between RCA

and Georges, "in any way concerning, arising out of or related to employees employment, the

termination thereof, this Agreement or its enforcement" shall be submitted to mediation and/or

binding and mandatory arbitration in the Commonwealth of Pennsylvania and construed and

interpreted in accordance with the substantive laws of the Commonwealth.. Id at ¶13 and ¶14.

## MASSACHUSETTS LITIGATION

15.     On or about June 16, 2017, Georges commenced an action in the Commonwealth of

Massachusetts Superior Court against RCA, J. Brian O'Neill, Jeffrey Stewart, and Brad

Greenstein alleging wrongful termination, violations of the Massachusetts Wage Act, and

defamation, tortious interference with business relations, promissory estoppel and vicarious

liability (the "Massachusetts Action").

16.     Georges, in his Complaint, makes specific allegations relating to RCA's treatment

procedures, methods of operations, quality assurance procedures, training processes, staffing,

and financial information.

17.     This information is deemed "confidential information" by the terms of the Employee

Confidentiality agreement signed by Georges as a condition to his employment with RCA.

18.     The Complaint was not filed in the Massachusetts Superior Court under seal or with any

notification that it contains confidential information.  Rather, the Complaint was filed in its

entirety on the Superior Court Docket, which is readily available to the public.

19.     Upon information and belief, the media has accessed the Complaint and initiated an

investigative report based on the allegations contained within the report.

20.     Executive level staff at RCA has been approached by reporters seeking comments about

the allegations contained within the Complaint.

21.     All of the claims asserted by Georges, all arise, directly, out of his employment

relationship and separation thereof from RCA.

22.     Georges' sole connection to any of the individual Defendants in the Massachusetts

Action was his employment with RCA.  In particular, the Plaintiff's Complaint,[1] Counts One

(Violation of the Wage Act) and Count Two (Wrongful Termination), assert claims against Brian

O'Neill, an individual the Plaintiff describes as "the founder and manager of Recovery Centers

of America Holdings, LLC." (Complaint, ¶ 8).  Count Three (Defamation) is asserted against

Jeffrey Stewart, the alleged "Director of Operations" at RCA (Complaint, ¶ 3).  Count Three

asserts that during an RCA staff meeting on February 10, 2017, Mr. Stewart allegedly made false

statements about the Plaintiff to other RCA employees. (Complaint, ¶ 50).

23.     Count Four (tortious interference with advantageous business relations) is directed to

Brad Greenstein, another alleged "Director of Operations" at RCA. (Complaint, ¶ 4).  This

Count alleges that Mr. Greenstein interfered with Plaintiff's employment relationship with RCA.

Count Five (Wrongful Termination in Violation of Public Policy), Count Six (Promissory

Estoppel) and Count Seven (Vicarious liability) assert claims directly against RCA and again all

---

[1] The Complaint filed in the Massachusetts Superior Court action is referenced through this Complaint.  However
the Massachusetts Complaint is not attached as an exhibit herein in an effort to avoid further publication of
confidential information.  A copy can be provided to the Court upon request.

arise out of Mr. Georges' employment relationship with RCA and the termination of that relationship.

24.     While the Defendants have significant and substantial legal and factual defenses to the Plaintiff's claims, the forum for the adjudication of those claims is first mediation and then, if necessary, an arbitration proceeding to be carried out in Pennsylvania in conformity with the Employment Agreement.

25.     George's complaint makes clear that his claims against the Massachusetts Defendants are inextricably intertwined through his assertion of a vicarious liability claim against RCA. Through this claim, Mr. Georges' argues that RCA's actions are so interwoven with those of the Individual Defendants that RCA is legally responsible for the alleged acts and omissions of the Individual Defendants.  Thus, he is  estopped to object to an Order compelling arbitration pursuant to his employment agreement.

26.     Georges has alleged substantially interdependent and concerted misconduct by both RCA, a signatory to the contract and the other Massachusetts Defendants, nonsignatories to the contract and consequently, medication and arbitration under his employment agreement is appropriate.

27.     Thus, under either circumstance, Mr. Georges is equitably estopped from claiming that his claims against the Individual Defendants are not subject to the Dispute Resolution provision.

28.      Georges' entire complaint is "intimately founded in and closely related to" his employment with RCA, which itself is memorialized and confirmed through his Employment Agreement.

29.     Stated more simply, without his Employment Agreement, Mr. Georges has no
employment relationship with RCA and without the employment relationship; Mr. Georges has
no legal claims against any of the Defendants.

### Count I
### (Equitable Relief in the Form of a Preliminary Injunction)

30.     Denial of a Preliminary injunction will result in irreparable harm to the Plaintiff.

31.     In violation of the Confidentiality Agreement, Defendant has published confidential
information about RCA and, upon information and belief, has been releasing confidential
information to the press.

32.     For the reasons set forth above, Plaintiffs have a reasonable probability of establishing a
breach of the Confidentiality Agreement.

33.     Allowing Defendant to continue this course of conduct will result in irreparable harm to
RCA's reputation in the community, and negatively impact upon its ability to conduct business.

34.     Granting the Preliminary Injunction will not result in any harm to Defendant. Defendants
actions in publishing confidential information about RCA , as well as the information he is
providing to the press are in direct conflict with  the Confidentiality Agreement signed by
Georges. Accordingly, there are no negative consequences to Defendant is the preliminary
injunction is granted.

35.     Granting the injunctive relief requested will not adversely affect any public interest as the
relief is being sought to enforce a private contract between RCA and Georges.

36.     Granting the requested relief will properly restore the parties to the status that existed
immediately prior to the wrongful conduct at issue in this case.

    WHEREFORE, Plaintiff respectively requests that this Court issue an Order:

(1) Enjoining Defendant from continuing to divulge confidential information to the press relating to his employment with RCA;

(2) Order Defendant to comply with the terms of the Confidentiality Agreement and cease and desist all confidential communications with any third party ;

(3) Directing Defendant to dismiss the Complaint filed in the Massachusetts Superior Court and submit the matter to mediation/arbitration in accordance with the Agreement ;

(4) Directing Defendant to disclose all persons to whom he disseminated confidential information in violate of the Agreement; and

(5) For such other and further relief as the court may deem just and proper.

### Count II
### (Order Compelling Arbitration Pursuant to 9 U.S.C. § 4)

37.      Plaintiff, RCA repeats and realleges the allegations set forth in Paragraphs 1 through 36 above as if fully set forth herein.

38.      The Employment Agreement is a valid and enforceable contract.

39.      Mr. Georges voluntarily agreed to the terms of the Agreement, including the mediation/arbitration provision.

40.      All of the claims brought by Mr. Georges in the Complaint fall within the scope of the arbitration provision, which requires that any and all claims arising out of or relating to Mr. Georges ' employment at RCA be decided by mandatory mediation and arbitration in Philadelphia, Pennsylvania.

41.      Although the Individual Massachusetts Defendants are not signatories of the Agreement, Georges' claims in the Complaint must be mediated and/or arbitrated.

42.      An employee cannot avoid an arbitration agreement with his employer with a tactical strategy of suing only an executive of that employer in Court.

43.     Georges brought the Complaint in contravention of the arbitration provision of the

Agreement.

44.     Pursuant to Section 4 of the Federal Arbitration Act, this Court has authority to compel

Respondent to arbitrate all claims brought in the Complaint.

        WHEREFORE, RCA quests this Honorable Court issue an Order, pursuant to

Section 4 of the Federal Arbitration Act, compelling the mediation and/or arbitration of all

claims in the Complaint in accordance with the Agreement.


## PRAYER FOR RELIEF

Plaintiffs demand judgment as follows:

-   Enjoining Defendant from continuing to divulge confidential information to the press
    relating to his employment with RCA;

-   Order Defendant to comply with the terms of the Confidentiality Agreement and cease
    and desist all confidential communications with any third party ;

-   Directing Defendant to dismiss the Complaint filed in the Massachusetts Superior
    Court and submit the matter to mediation/arbitration in accordance with the
    Agreement ;

-   Directing Defendant to disclose all persons to whom he disseminated confidential
    information in violate of the Agreement;

-   An Order, pursuant to Section 4 of the Federal Arbitration Act, compelling the
    mediation  and/or arbitration of all claims in the Complaint in accordance with the
    Agreement;

-   Awarding attorney's fees for Defendant's  intentional violation of the Agreement and
    forcing RCA to seek its remedy in court; and

-   For such other and further relief as the court may deem just and proper.

Respectfully submitted,

OHAGAN MEYER, PLLC

Joseph E. Vaughan, Esquire (41182)
Tamara S. Grimm, Esquire (315600)
100 N. 18th Street, Suite 700
Two Logan Square
Philadelphia, PA 19103
(215)569-2400

Dated: August 4, 2017

## EMPLOYEE CONFIDENTIALITY, NON-COMPETITION & NON-SOLICITATION AGREEMENT

| This Agreement is entered into as of (DATE): | 8/1/2016 |
|---|---|
| by and between the Company (defined herein): | Recovery Centers of America and its entities |
| And Employee Name ("EMPLOYEE"): | Nabil N Georges |

### Recitals:

The parties hereto desire to enter into this Agreement in connection with, and as a condition to, the engagement of the Employee as an employee to the Company.

The parties hereto acknowledge and agree that the term Company is used throughout this Agreement  to mean Recovery Centers of America Holdings LLC, a Delaware limited liability company  and any of  RCA's parent, subsidiaries, affiliates and related entities and any entity owned or controlled by or under common control with any of those entities, including any businesses that may be acquired after the date of Employee's execution of this Agreement and Employee's employment with the Company, and any successor in interest thereto or assignee (collectively "Affiliates"), but, only to the extent Employee performed services for such Affiliates and/or has acquired Confidential Information about such Affiliates.

NOW, THEREFORE, in consideration of the employment of the Employee by the Company and the payment by the Company of compensation to the Employee for services to be rendered, and other good and valuable consideration, and intending to be legally bound, the parties hereto agree as follows:

1.     **Confidential Information.**

       (a)     **Non-Disclosure and Restricted Use of Confidential Information.**  The Employee acknowledges that in the course of performing services for the Company, the Employee may obtain knowledge of the Company's Confidential Information. Employee acknowledges and agrees that "Confidential Information" means any confidential or proprietary knowledge or information whatsoever acquired during Employee's employment with the Company including, but not limited to, information relating to or concerning the Company's treatment procedures, operating procedures, methods of operations, manuals, policies and procedures, trade secrets, systems, quality assurance, customers, customer lists, managed care providers that contract with the Company, markets, suppliers, referral sources, sales training processes and methods, previous, current and potential patients (such as their names, contact information, amounts charged for services and including the fact that they are in need of the services provided by Company), marketing, financial information, pricing, or any other confidential information regarding the Company. During the term of the Employee's employment by the Company and continuing thereafter, the Employee agrees to keep the Confidential Information secret and confidential and not to publish, disclose or divulge to any other party, or use any Confidential Information for the Employee's own benefit or to the detriment of the

DM3\3286855.1

Company or for any other purpose other than in the performance of services to and on behalf of the Company, without the prior written consent of the Company, whether or not such Confidential Information was compiled or developed by the Employee.  The Employee also agrees not to divulge, publish or use any proprietary and/or confidential information of others that the Company is obligated to maintain in confidence.

        **(b)**      **Exclusions.**  The restrictions on use and disclosure of the Confidential Information set forth in this Agreement shall not apply to any portion of the Confidential Information that:  (i) is at the time of disclosure or thereafter becomes generally available to the public other than as a result of disclosure by the Employee; (ii) becomes available to the Employee on a non-confidential basis from a source other than the Company that has represented to the Employee (and regarding which the Employee reasonably believes) that such source is entitled to disclose it; (iii) was known to or in the possession of the Employee immediately prior to the time of disclosure as evidenced by the Employee's records and files at such time; or (iv) is independently developed or acquired by the Employee without use of or reference to the Confidential Information, as evidenced by documentation or other evidence in the Employee's possession.

        **2.**      **Inventions and Discoveries.**

        **(a)**      **Disclosure.**  The Employee agrees to promptly and fully disclose to the Company, with all appropriate detail, all developments, know-how, discoveries, inventions, improvements, concepts, ideas, formulae, processes and methods (whether patentable, copyrightable or otherwise) made, received, conceived, acquired or written by the Employee (whether or not at the request or upon the suggestion of the Company), solely or jointly with others, during the period of the Employee's employment with the Company that (i) relate to any line of business, activity or field of interest with respect to which the Employee renders services to the Company, or (ii) are otherwise made through the use of the Company's time, facilities or materials (the foregoing being hereinafter referred to collectively as the "**Inventions**").

        **(b)**      **Assignment and Transfer.**  The Employee hereby assigns and transfers to the Company all of the Employee's right, title and interest in and to the Inventions, and the Employee further agrees to deliver to the Company any and all drawings, notes, specifications and data relating to the Inventions, and to sign, acknowledge and deliver all such further papers, including applications for and assignments of patents and copyrights, and all renewals thereof, as may be necessary to obtain patents and copyrights for any Inventions in any and all countries and to vest title thereto in the Company and its successors and assigns and to otherwise protect the Company's interests therein.  If the Company is unable, after reasonable effort, to secure the Employee's signature on any application for patent, copyright, trademark or other analogous registration or other documents regarding any legal protection relating to an Invention, whether because of the Employee's physical or mental incapacity or for any other reason whatsoever, the Employee hereby irrevocably designates and appoints the President and each Vice President of the Company as the Employee's agent and attorney-in-fact, to act for and in the Employee's behalf and stead to execute and file any such application or applications or other documents and to do all other lawfully permitted acts to further the prosecution and issuance of patent, copyright, trademark or other registrations or any other legal protection thereon with respect to an Invention with the same legal force and effect as if executed by the Employee.

        **(c)**      **Company Documentation.**  The Employee shall hold in a fiduciary capacity for the benefit of the Company all business plans, financial information, documentation, disks, programs, data, records, drawings, manuals, reports, sketches, blueprints, letters, notes, notebooks and all other writings, electronic data, graphics and tangible information and

2

materials of a secret, confidential or proprietary information nature relating to the Company or the Company's business that are in the possession or under the control of the Employee, including those created or revised by the Employee.

3.　　**Non-Competition.** THIS SECTION APPLIES ONLY TO EMPLOYEES IN DIRECTOR POSITIONS, AND SALES AND MARKETING POSITIONS. The Employee agrees that during the term of the Employee's employment by the Company and for a period of six (6) months from and after the cessation thereof for any reason what so ever, the Employee will not directly or indirectly, for Employee's own behalf or for the benefit of any other person or entity, in any capacity (as an employee, independent contractor, partner, trustee, director, officer, agent, shareholder, lender of money, guarantor or otherwise), engage in any activity that competes with any service developed, provided or marketed by the Company or as to which the Company has taken affirmative steps to research (or begin researching), develop, manufacture, market or provide (collectively referred to as "the Services"), within a sixty (60) mile radius of any location of the Company, to the extent Employee was involved in or acquired Confidential Information about the Services.

4.　　**Non-Solicitation of Employees.** The Employee agrees that during the term of the Employee's employment by the Company and for a period of one year from and after the cessation thereof for any reason what so ever, the Employee will not directly or indirectly, for Employee's own behalf or for the benefit of any other person or entity, hire, solicit, aid in solicitation of, induce, encourage or in any way cause any Company employee, consultant or independent contractor to leave the employ of the Company.

5.　　**Non-Solicitation of Clients and Referral Sources.** The Employee agrees that during the term of the Employee's employment by the Company and for a period of one year from and after the cessation thereof for any reason what so ever, the Employee will not directly or indirectly, for Employee's own behalf or for the benefit of any other person or entity, solicit, retain the services of, accept business from, or endeavor to entice away from the Company any person who, to the Employee's knowledge is, or was within the then most recent one-year period, a customer, client, referral source, a health maintenance organization, third party payor, health care purchasing organization, or other similar organization or entity with a contractual relationship with the Company or other account of the Company about which Employee learned Confidential Information, for which Employee had any responsibility, or to whom the Employee provided services. for the purpose of (a) selling services or goods in competition with the Company, (b) inducing Company clients, customers or referral sources to cease doing business in whole or in part with the Company or (c) inducing Company clients, customers, or referral sources to do business with any person or business entity in competition with the Company.

6.　　**Remedies and Injunctive Relief.** The Employee acknowledges that compliance' with this Agreement is necessary to protect the goodwill and other proprietary interests of the Company. The Employee acknowledges that a breach of this Agreement will result in irreparable and continuing damage to the Company and its business, for which there will be no adequate remedy at law. The Employee further agrees that in the event of any breach of this Agreement, the Company and its successors and assigns shall be entitled to immediately seek injunctive relief from a court of law and shall be entitled to such other and further relief and damages as may be proper. The Employee also agrees and acknowledges that the time periods of the prohibitions referenced in this Agreement shall be extended by any period of violation or by any period of time required for the Company to obtain enforcement of the terms of this Agreement.

7.　　**Representations and Warranties.** The Employee represents and warrants to the Company that: (a) the Employee is not a party to nor otherwise subject to any agreement or

3

restriction that would prohibit the Employee from entering into this Agreement and carrying out the undertakings contemplated hereby, and (b) carrying out this Agreement and the undertakings contemplated hereby will not infringe or conflict with, and are not inconsistent with, the rights of any third party.

      **8.**    **No Right to Employment.** It is expressly understood that this Agreement is not intended to define the scope of the Employee's employment by the Company or the terms of such employment other than as specifically provided herein. Any such other terms may or may not be contained in a written agreement. In any event, nothing contained in this Agreement shall be interpreted to create an employment relationship other than at will.

      **9.**    **Return of Property.** Upon the termination of Employee's employment for any reason, Employee shall return to the Company, and shall not retain any copies in any form or media of expression, all Company and Affiliate property that is then in Employee's possession, custody or control, including, without limitation, all keys, access cards, credit cards, computer hardware and software, documents, records, policies, marketing information, design information, specifications and plans, data base information and lists, and any other property or information that Employee has or had relating to the Company or any Affiliate (whether those materials are in paper or computer-stored form), and including but not limited to any documents containing, summarizing, or describing any Confidential Information.

      **10.**    **Survival of Agreement; Binding Nature; and Successors & Assigns.** It is expressly agreed that the provisions of this Agreement shall survive and apply after the cessation of the Employee's employment with the Company for any reason whatsoever. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs and successors. The Company may assign this Agreement to any person or entity, including, but not limited to, any successor, parent, subsidiary or affiliated entity of the Company. The Company also may assign this Agreement in connection with any sale or merger (whether a sale or merger of stock or assets or otherwise) of the Company or the business of the Company. Employee expressly consents to the assignment of the restrictions and requirements set forth in this Agreement to any new owner of the Company's business or purchaser of the Company. Employee may not assign, pledge, or encumber his/her interest in this Agreement, or any part thereof, without the written consent of the Company.

      **11.**    **Enforceability.** If any provision of this Agreement shall be invalid or unenforceable, in whole or in part, then such provision shall be deemed to be modified or restricted to the extent and in the manner necessary to render the provision valid and enforceable, or shall be deemed excised from this Agreement, as the case may require, and this Agreement shall be construed and enforced accordingly to the maximum extent permitted by law.

      **12.**    **No Waiver.** No claim or right arising out of a breach or default under this Agreement shall be discharged in whole or in part by a waiver of that claim or right unless the waiver is in writing and signed by the aggrieved party.

      **13.**    **Governing Law.** This Agreement shall be construed and interpreted in accordance with the substantive laws of the Commonwealth of Pennsylvania.

      **14.**    **Dispute Resolution.** Except as expressly stated in Section 6 of this Agreement, any disputes between the Company and Employee in any way concerning, arising out of or related to Employee's employment, the termination thereof, this Agreement or its enforcement, shall be first submitted to mediation before a mutually agreeable mediator. If the matter cannot be resolved in mediation, then the dispute will be resolved in binding and mandatory arbitration before a single arbitrator who is familiar with employment law and conducted pursuant to the

DM3\3286855.1

National Rules for the Resolution of Employment Disputes of the American Arbitration Association, or its successor, then in effect. The costs of the mediation and arbitration shall be paid for equally by the parties unless the Employee can prove inability to pay the projected amount of fees. Each party shall initially be responsible for its own attorneys' fees, except that the arbitrator may award such fees and costs to the prevailing party, if permitted under state and federal law. All substantive rights which Employee and the Company or any Affiliate would have in a court of law, will be extended to the parties in arbitration, including all forms of relief. The decision of the arbitrator shall be final and may be entered as a judgment in any court of the Commonwealth of Pennsylvania. The mediation and arbitration proceedings required by this Section will take place in the Commonwealth of Pennsylvania. The requirement to arbitrate does not apply to the filing of an employment related claim, dispute or controversy with a federal, state or local administrative agency. However, Employee understands that by entering into this Agreement, Employee is waiving Employee's right to have a court and a jury determine Employee's rights, including, but not limited to, rights under federal, state and local statutes prohibiting employment discrimination, including sexual harassment and discrimination on the basis of age, sex, race, color, religion, national origin, disability, veteran status or any other factor prohibited by governing law. Employee also acknowledges and agrees that Employee is waiving any right to assert class, collective or other representative action claims against the Company to the fullest extent permissible by law and that the selected arbitrator will be prohibited from presiding over such claims.

   **13. No Disparagement.** The Employee agrees that during Employee's employment with the Company and after the termination of thereof for any reason, Employee will not disparage the Company or any of its affiliates, or their services, agents, or employees.

This Agreement may not be modified, in whole or in part, except in writing signed by both of the parties. This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof.

| Employee Print Name: | Employee's Signature: | Date: |
|---|---|---|
| Nabil N Georges | | 8/1/16 |
| Recovery Centers of America Holdings, LLC, by Human Resources Designee Print Name: | Human Resources Designee Signature: | Date: |
| | | |